UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CARL ASHLEY,

          Plaintiff,                     Case No. 1:21-cv-192

v.                                      Honorable Paul L. Maloney

SHERRY L. BURT,

          Defendant.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.  The Court will also deny Plaintiff's pending motion as moot.

**Discussion**

I.      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.

The events about which he complains, however, occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.   Plaintiff sues MCF Warden Sherry L. Burt.

Plaintiff challenges Defendant's enforcement of an MDOC policy restricting the categories of minor children permitted to visit prisoners.  In 1976, Plaintiff was convicted of first degree murder and sentenced to a term of life in prison.[1]  Plaintiff alleges that in June 1996, he married.  His wife came to the marriage with three children aged 6, 7, and 11 years.  Several decades on, Plaintiff alleges that his wife's eldest child, Plaintiff's step-daughter, is now 37 years old,[2] and has three children of her own.  His step-daughter's children, Plaintiff's step-grandchildren, were born in 2004, 2009, and 2015.  Presently, they are all minor children.  *See* Mich. Comp. Laws § 791.268a(3).

Plaintiff alleges that, until late 2018, his step-grandchildren were able to visit him at MCF.  Within a few months after each step-grandchild was born, they were added and approved to Plaintiff's "immediate family" visitor list.  However, on December 27, 2018, Defendant sent Plaintiff's step-daughter a letter.  The letter stated that MDOC policies did not consider her children—Plaintiff's step-grandchildren—among the enumerated classes of minor permitted on prisoner's visitor lists.  Consequently, Plaintiff's step-grandchildren could not visit him as minors.

---

[1] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence.  The accuracy of the source regarding this specific information "cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)).

Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding."  Fed. R. Evid. 201(d) (emphasis added).  Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

[2] The Court notes, however, that while his wife's eldest child has allegedly aged 26 years, less than 25 years have passed since his nuptials.

Defendant's letter further instructed that each of Plaintiff's step-grandchildren could, upon reaching age 18, apply to be a "friend" on Plaintiff's visitor list.  The letter conceded that although Plaintiff's step-grandchildren had been allowed to visit previously, this had been an oversight because a "step-grandchild" was not one of the enumerated types of immediate family members under MDOC Policy Directive 05.03.140, ¶ B (eff. date Dec. 17, 2018).

Plaintiff contends that the MDOC policies should consider step-grandchildren as grandchildren.  He cites several sources for support, including a section in the Code of Federal Regulations pertaining to higher education and a passage from the American Grandparents Association.  He filed grievances addressing this issue with MCF.  Plaintiff also alleges that he requested that Defendant arrange a hearing with the Department of Licensing and Regulatory Affairs (LARA), purportedly in compliance with MDOC Policy Directive 05.03.140.

Plaintiff alleges that Defendant's conduct violated his Eighth Amendment rights, his right to associate provided by the First Amendment, and his procedural due process rights provided by the Fourteenth Amendment.  For relief, Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and costs.

II.   **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.   **Visitation Restrictions**

As continually emphasized by the Supreme Court, the problems of prison administration are peculiarly for resolution by prison authorities, and their resolution should be accorded deference by the courts. *See Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001); *Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84–96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125–26 (1977). These concerns are even

stronger when a state penal institution is involved.  *Glover v. Johnson*, 138 F.3d 229, 241 (6th Cir. 1998).

While inmates retain certain constitutional rights, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests."  *See Turner*, 482 U.S. at 89.  To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors:  (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.  *Turner*, 482 U.S. at 89–90.  Applying this standard, the Supreme Court has upheld a variety of limitations on First Amendment protections. *See Shaw*, 532 U.S. at 229 (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (sustaining proscriptions on media interviews)); *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (applying *Turner* standard to a prison ban on certain publications); *Turner*, 482 U.S. at 93 (restricting inmate-to-inmate correspondence); *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 133 (upholding prohibition on prisoner labor unions).

In *Overton v. Bazzetta*, 539 U.S. 126 (2003), the Supreme Court applied the *Turner* test to uphold MDOC's visitation restrictions, including the MDOC's determination of which minors were permitted.  The plaintiffs in *Bazzetta* had brought claims under the First Amendment's freedom of association provision, the Eighth Amendment, and the Fourteenth Amendment's

substantive due process protections. *Bazzetta*, 539 U.S. at 129.  On those grounds, the *Bazzetta*

plaintiffs had challenged policies that the MDOC revised in 1995, which excluded all minors from

visitation except "children, stepchildren, grandchildren, or siblings of the inmate."  *Id.*  The

policies further specified that where "an inmate's parental rights ha[d] been terminated, the child"

could not attend visitation.  *Id.* at 129–30.  Among the minors at issue in *Bazzetta* were "nieces

and nephews and children as to whom parental rights ha[d] been terminated."  *Id.* at 133.

Applying the *Turner* test, the Court determined that the MDOC had issued the

policies to address the "[s]pecial problems" posed by the presence of children in prison facilities,

who were put "at risk of seeing or hearing harmful conduct . . . and [who] must be supervised with

special care."  *Id.* at 129.  The Court concluded that the restrictions related rationally to the

legitimate governmental interest in "maintaining internal security and protecting child visitors

from exposure to sexual or other misconduct or from accidental injury" by reducing the number

of minors each guard must supervise.  *Id.* at 133.

The *Bazzetta* Court further concluded that the three remaining *Turner* factors

weighed in favor of upholding the restrictions.  The excluded minors had alternative means to

communicate with the prisoners they were not allowed to visit.  *Id.* at 135.  Accommodating the

plaintiffs' demands would have required a "significant reallocation of the prison system's financial

resources and would [have] impair[ed] the ability of corrections officers to protect all who are

inside a prison's walls."  *Id.*  Finally, the Court determined that the plaintiffs had "not suggested

alternatives . . . for any of the regulations at issue."  *Id.* at 136.  Upon consideration of all four

*Turner* factors, the Court upheld the MDOC's visitation restrictions.

The Supreme Court's conclusions in *Bazzetta* squarely apply in the instant case.

Plaintiff has not alleged facts that materially distinguish his case from *Bazzetta*.  Indeed, the

prisoner-niece/nephew and prisoner-child familial ties at issue in *Bazzetta* are arguably stronger than those at issue here, particularly because Plaintiff never knew his stepchildren, much less his step-grandchildren, before his conviction.  In contrast, a prisoner may have been a surrogate parent to a niece or nephew, and a prisoner may have been a doting parent before his parental rights were terminated, yet those bonds were not strong enough to satisfy the Supreme Court in *Bazzetta*.

In sum, Plaintiff fails to provide the Court with any grounds on which to distinguish his case from *Bazzetta*.  Therefore, notwithstanding what may be an enriching and loving relationship between Plaintiff and his step-grandchildren, his allegations fail to state a First, Eighth, or Fourteenth Amendment substantive due process claim against Defendant.

Furthermore, to the extent that Plaintiff alleges a separate a Fourteenth Amendment procedural due process claim, that claim likewise fails.  The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  Plaintiff's allegations do not maintain that Defendant deprived him of a protected liberty or property interest.  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).  Therefore, his allegations fail to state a procedural due process claim.  Accordingly, the Court will dismiss the complaint.

IV.     **Pending Motion**

Plaintiff has also filed a motion to direct the MDOC or Michigan Attorney General to disclose Defendant's current address in order to facilitate service of process.  (ECF No. 3.)  In light of the dismissal of the complaint, the Court will deny Plaintiff's motion as moot.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's pending motion as moot. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: March 18, 2021

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge